Juanita R. Brooks, SBN 75934
E-mail: brooks@fr.com
Fish & Richardson P.C.
12390 El Camino Real
San Diego CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Aamir Kazi (*Admitted Pro Hac Vice*)
E-mail: kazi@fr.com
Fish & Richardson P.C.
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
Telephone: (404) 892-5005
Facsimile: (404) 892-5002

Chase A. Scolnick (SBN 227631)
E-mail: cscolnick@kelleranderle.com
Keller Anderle LLP
18300 Von Karman Ave., Suite 930
Irvine, California 92612

Steven Katz
(*Pro Hac Vice Forthcoming*)
E-mail: katz@fr.com
Fish & Richardson P.C.
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

Attorneys for Defendant
MICROSOFT CORPORATION

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNILOC 2017 LLC,<br><br>        Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>        Defendant. | Case No. 8:18-cv-02054-AG (JDEx)<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS U.S. PATENT NOS. 8,613,110 AND 7,024,696 PURSUANT TO FED. R. CIV. P. 12(b)(6); MEMORANDUM AND POINTS AND AUTHORITIES**<br><br>Date:      February 11, 2019<br>Time:      10:00 a.m.<br>Location:  Ronald Reagan Federal Building, U.S. Courthouse, 411 West Fourth Street, Courtroom 10D, Santa Ana, CA, 92701-4516<br><br>Judge:  Hon. Andrew J. Guilford |

        PLEASE TAKE NOTICE that on February 11, 2019 or as soon thereafter as counsel may be heard, Microsoft Corporation ("Microsoft") will, and hereby does move the Court under Federal Rule of Civil Procedure 12(b)(6) to dismiss U.S. Patent Nos. 8,613,110 and 7,024,696 from the case.  This Motion is based on this Notice and the accompanying memorandum of point and authorities.

<u>Statement Regarding Conference Pursuant to Local Rule 7-3:</u>  In a telephone conference on December 31, 2018, Counsel for Microsoft notified Plaintiff's Counsel of the plan to file the above-noticed Motion.  Plaintiff's counsel confirmed that Plaintiff would not agree to dismiss U.S. Patent Nos. 8,613,110 and 7,024,696. The Parties have been unable to resolve their dispute.

Dated:  January 7, 2018                    FISH & RICHARDSON P.C.


                                           By: */s/  Aamir A. Kazi*
                                                Aamir A. Kazi

                                           Attorneys for Defendant
                                           MICROSOFT CORPORATION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ........................................................................................1

II.    BACKGROUND .........................................................................................2

    A.    The Bahar Patents Require Counting Attempts to Obtain Service Data For Use in Software Activation ..................................................2

    B.    A Court Previously Construed Counting "Attempts" to Require Counting All Attempts to Obtain Service Data – Both Successful and Not Successful .........................................................................3

    C.    Uniloc Alleges (Twice) Against Microsoft the Same Infringement Theory that Failed Against Acronis ......................................................6

        1.    Uniloc's Theory in its Original Complaint Was Facially Deficient ........................................................................6

        2.    Uniloc's Amended Complaint Does Not Allege that Microsoft's Products Track "All Attempts to Obtain Service Data" ........................................................................10

III.    ARGUMENT.............................................................................................12

    A.    Legal Standards ...............................................................................12

        1.    Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)..................12

        2.    Issue Preclusion......................................................................12

    B.    Uniloc Fails to State a Claim Because the Pled Facts As a Matter of Law Fail to Establish Patent Infringement .....................................13

    C.    Uniloc Cannot Offer a Different Construction from the *Acronis* Case ..................................................................................................16

IV.    CONCLUSION.........................................................................................18

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**                 **Page(s)**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ....................................................13

*Atlas IP, LLC v. Exelon Corp.,*
189 F. Supp. 3d 768 (N.D. Ill. 2016) .......................................15

*Blatty v. Warner Bros. Entm't,*
2011 WL 13217379 (C.D. Cal. Apr. 21, 2011) ...........................12, 17

*Consumer Advocacy Grp., Inc. v. ExxonMobile Corp.,*
86 Cal. Rptr. 3d 39 (Ct. App. 2008) ....................................17

*Cumberland Pharmaceuticals Inc. v. Sagent Agila LLC,*
No. 12-825-LPS, 2013 WL 5913742 (D. Del. 2013).....................15, 16

*Gharb v. Mitsubishi Elec. Automation, Inc.,*
No. 10 C 07204, 2012 WL 1986435 (N.D. Ill. June 4, 2012) ................15

*Harris v. Cnty. of Orange,*
682 F.3d 1126 (9th Cir. 2012) ..........................................1

*Holcombe v. Hosmer,*
477 F.3d 1094 (9th Cir. 2007) .........................................12

*Ileto v. Glock,*
249 F.3d 1191 (9th Cir. 2003) .........................................12

*Mack v. S. Bay Beer Distribs., Inc.,*
798 F.2d 1279 (9th Cir. 1986), *abrogated on other grounds by Astoria Fed.*
*Savs. & Loan Ass'n v. So/imino,* 501 U.S. 104 (1991) .........................12

*Macronix Int'l Co. v. Spansion Inc.,*
4 F. Supp. 3d 797 (E.D. Va. 2014) .....................................13

*Moody v. Morris,*
608 F.Supp.2d 575 (S.D.N.Y. 2009).....................................15

*Nalco Co. v. Chem-Mod, LLC,*
No. 14-CV-2510, 2015 WL 507921 (N.D. Ill. Feb. 4, 2015) ...........15, 16

*In re Palmer,*
207 F.3d 566 (9th Cir. 2000) ..........................................12

*Paulo v. Holder,*
669 F.3d 911 (9th Cir. 2011) ..........................................12

*Pieczenik v. Abbott Labs.*,
    No. 10-2230 (JAP), 2011 WL 1045347 (D. N.J. Mar. 23, 2011) ...........................................15

*Roper v. Jo-Ann Stores, Inc.*,
    211 Fed. Appx. 950...................................................................................................................15

*Shrawz v. United States*,
    234 F.3d. 428 (9th Cir. 2000) ..................................................................................................12

*TecSec, Inc. v. International Business Machines Corp.*,
    731 F.3d 1336 (Fed. Cir. 2013)................................................................................................12

*Uniloc USA, Inc. et al. v. Acronis, Inc. et al.*,
    No. 6:15-cv-1001 (E.D.Tex. February 21, 2017) ........................................................ *passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ......................................................................................12

iii

## I.   INTRODUCTION

Uniloc's Amended Complaint ("Amended Complaint") is Uniloc's second failed attempt in this case to allege infringement of U.S. Patent Nos. 8,613,110 ("the '110 patent") and 7,024,696 ("the '696 patent") (collectively, the "Bahar Patents").  Uniloc's original complaint was facially deficient because a binding prior claim construction[1] requires that the invention track "all attempts (both successful and unsuccessful attempts) to obtain service data," whereas Uniloc only alleged that Microsoft tracks successful activations.  Accordingly, Microsoft moved to dismiss the original Complaint.  *See* ECF No. 13 ("Complaint").

Recognizing the deficiency in its Complaint, Uniloc filed its Amended Complaint, this time alleging that Microsoft tracks both successful and unsuccessful activations.  *See* ECF No. 24 ("Amended Complaint").  But Uniloc has not changed its underlying legal theory.  It still focuses erroneously on Microsoft's activations, rather than on attempts to obtain service data (that can be used in those activations) as required by the patent claims.  Thus, Uniloc's Amended Complaint still fails because the allegations that Uniloc has added do not cure the fundamental flaw in its infringement theory:  Microsoft's accused software (as described in the Amended Complaint) does not track "all attempts to obtain service data" as the patent claims require under the prior court's binding claim construction.

Because a prior court has already rejected Uniloc attempt to equate tracking activations with tracking "attempts to obtain service data," this Court should grant Microsoft's Motion to Dismiss the Bahar Patents.

---

[1] In connection with a motion to dismiss, a court "may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts."  *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).

## II.   BACKGROUND

### A.   The Bahar Patents Require Counting Attempts to Obtain Service Data For Use in Software Activation

The Bahar Patents, which are related and share a specification[2], purport to concern a technique for reducing software piracy.  *See* Amended Complaint at Exs. B ("'110 Pat.") and C ("'696 Pat.").  Software piracy occurs when someone uses a copy of software without consent (e.g., without paying for a license).  One way to deter piracy is to require the use of a code to unlock the software.  *See* '696 Pat. at 1:52-55.  For example, the software may function "only . . . after a remote service provider transmits [to the software] a code sequence that will activate the software for use."  *Id.* at 1:13-16.  The Bahar Patents, however, posit that these codes can be "easily copied and distributed to unlicensed users" without permission.  *Id.* at 1:52-55.

The Bahar patents purport to describe an improved technique of combatting piracy in which the remote server determines whether to provide an activation code to requesting software based on counting the number of times the server receives a request for the code for that particular copy of software.  *Id.* at 4:65-5:14.  The Bahar patents refer to these activation codes as "service data" or "access codes." *See, e.g., Id.* at 5:19-25.  The remote server uses the number of requests for service data received to infer whether the user's copy is legitimate or pirated.  *Id.*  The assumption of the patents is that a legitimate user would only request service data once, or perhaps only a few times, and therefore an exceedingly high number of attempts (i.e., requests for service data) would be evidence that the copy of software has been pirated:

> Multiple online activation attempts of the same software 5, regardless if such attempts are by distinct or the same users would naturally indicate that the software 5 was pirated and distributed to a multitude

---

[2] Because of this, all citations to the Bahar patents herein are to the '696 patent.

2

of different users. In this situation, the remote service provider may contact the registered user(s) to investigate into potential piracy. Additionally, the remote service system 9 may blacklist the specific software 5, as referenced by its identification code.

*Id*. at 4:65-5:5.

If the remote server receives a threshold number of attempts to obtain service data for a particular copy of software, the server can assume that the attempts are attempted piracy, and "blacklist" that specific copy such that the remote server will no longer provide service data for that particular instance of software.  *Id.*

Each of the eight independent claims in the Bahar patents reflect this idea of an activation process in which the remote server (1) counts the number of requests for service data from software; and (2) provides the service data (e.g., in the form of an activation code) only when the number of attempted requests falls below some threshold.  For example, claim 1 of the '696 Patent recites "counting the number of times an attempt has been made to obtain said service data in order to activate" the software and sending "service data" when the remote server "determines that the number of times an attempt has been made . . . to activate" is "fewer than a predetermined threshold."  *Id*. at 9:17-27 (claim 1).  The other independent claims of the '696 and '110 patents include similar limitations that count the number of "attempts" (to obtain service data) and compare that count to a threshold.  *Id*. at 10:50-59 (claim 15); 11:60-67 (claim 24); 12:52-62 (claim 30); 14:11-17 (claim 36); '110 Pat. at 9:10-17 (claim 1); 9:51-10:8 (claim 7); 10:49-57 (claim 13).

### B.   A Court Previously Construed Counting "Attempts" to Require Counting All Attempts to Obtain Service Data – Both Successful and Not Successful

Uniloc previously asserted the '696 Patent against multiple parties, and at least one such case resulted in both a claim construction order and a final judgment.  On November 20, 2015, Uniloc filed a complaint in the Eastern District

3

of Texas asserting that Acronis, Inc. ("Acronis") and a related foreign entity infringed the '696 Patent.  Complaint, *Uniloc USA, Inc. et al. v. Acronis, Inc. et al.,* Civil Action No. 6:15-cv-1001 (ED.Tex.) at Dkt. No. 1 ("Acronis Complaint").  In its infringement allegation in the complaint, Uniloc pointed to Acronis's distribution and activation of software (*Id.* at ¶ 10) and identified functionality at the activation server that would allow only a set number of successful activations. *Id.* at ¶¶ 18-19.  Once the user had utilized that number of successful activations, subsequent activations would be rejected:

> 19.    Upon information and belief, the following describes, at least in part, the Acronis True Image software activation process:

> **"Too many activations" issue**
>
> Possible reasons for the issue:
>
> - **You exceed the maximum number of computers with installed Acronis True Image 2015.**
>   For example, you have a serial number for one computer and you install True Image on the second computer.
>
> Solutions:
>
> - Enter a new serial number. If you do not have it, you can buy it in the Acronis built-in store.
> - Move the license to your new computer from another one on which the product is already activated. To do this, select the computer from which you want to move the license. Note that True Image will be deactivated on that computer.

*Id.* Uniloc's infringement theory thus relied on the Acronis software counting the number of ***successful activations***, but made no mention of counting ***attempts to obtain service data*** for those activations.

The meaning of counting "attempts" in the claims became a central question in the *Acronis* case.  To support its infringement theory, Uniloc argued that counting activation "attempts" could encompass counting any of the "number of successful attempts, unsuccessful attempts, or both."  *Markman* Order at 10, *Uniloc USA, Inc. et al. v. Acronis, Inc. et al.,* No. 6:15-cv-1001 (E.D.Tex. February 21, 2017), ECF No. 162 ("Acronis *Markman* Order").  On the other hand, the

defendant sought a claim construction that the term "attempt" was limited to its plain-English meaning – "requests to activate the software that includes unsuccessful requests." *Id.* The court summarized the dispute as follows: "The parties dispute whether this term ['attempt'] must include unsuccessful attempts or could exclude unsuccessful attempts and just include successful attempts to activate a software application." *Id.* at 9.

Following a *Markman* hearing, the court adopted Acronis's interpretation of the plain meaning of "attempt," which required counting both successful *and* unsuccessful requests for service data:

> Therefore, the plain meaning of this phrase, which is evident from the language of the claim and the specification, **includes all attempts (both successful and unsuccessful attempts) to obtain the service data**.

*Id.* at 11. In rejecting Uniloc's proposed construction, the court stated that the claim required tracking the "number of times an attempt has been made for service data," and that tracking the number of "actual activations or installations" was different:

> The specification [] references attempts as attempts to activate, ***not actual activations or installations of the software application***. . . . . To the extent Uniloc's proposal refers to the number of 'attempts' to only mean the number of successful attempts (activations), Uniloc is deviating from the specific claim language. The surrounding claim language explicitly refers to "the number of times an attempt has been made to obtain service data."

*Id.* at 10-11 (emphasis added); *see also Id.* at 10 ("As claimed, the limitation tracks the number of 'attempts' to obtain service data for activating the software application and whether that number exceeds a certain predetermined threshold. Claim 15 does not state what is tracked is the number of activations or installations of the software exceeds a predetermined threshold.").

The Texas court issued its claim construction in that case on February 21, 2017. Six weeks later, Uniloc moved to dismiss the case "in view of the Claim

5

Construction Order" and other factors, and asked "the Court to enter judgment dismissing this action, with prejudice."  Plaintiff's Motion to Dismiss, *Uniloc, Inc. et al. v. Acronis, Inc. et. al*, Civil Action No. 6:15-cv-01001 (E.D. Tex.), Dkt. No. 171.  On May 31, 2017, the Texas court entered Final Judgment dismissing Uniloc's patent infringement claims with prejudice.  Final Judgment, *Uniloc, Inc. et al. v. Acronis, Inc. et al.*, Civil Action No. 6:15-cv-01001 (E.D. Tex.), Dkt. No. 181.

Uniloc never appealed the court's construction.

### C.    Uniloc Alleges (Twice) Against Microsoft the Same Infringement Theory that Failed Against Acronis

Just as in the *Acronis* case, Uniloc again incorrectly equates counting "all attempts to obtain service data" (what the claims require) with counting the activations themselves (what Uniloc pleads that Microsoft does).  Microsoft moved to dismiss the original Complaint because Uniloc alleged only that Microsoft counted successful activations.  Microsoft now moves to dismiss the Amended Complaint because Uniloc is alleging only that Microsoft counts "successful and unsuccessful" activations—and not that Microsoft tracks all "attempts to obtain service data."

### 1.    Uniloc's Theory in its Original Complaint Was Facially Deficient

The claims require that a remote activation server count attempts, and determine whether to provide service data based upon that count.  *See, e.g.,* '696 Pat. at cl. 1 ("counting the number of times an attempt has been made to obtain said service data . . . selectively transmitting service data to the user's computer when said remote service provider determines that the number of times an attempt has been made to obtain said service data"); *see, e.g.,* '110 Pat. at cl. 1 ("updating . . . a number of activation attempts" and "transmitting . . . an activation code . . . when the number of activation attempts is less than a predetermined threshold").

6

1    Based upon the prior court's construction of "attempt," Uniloc needed to allege

2    that Microsoft's remote activation server tracked "all attempts (both successful and

3    unsuccessful attempts) to obtain the service data."  Acronis *Markman* Order at 11.

4    Uniloc never alleged that.

5            Instead, Uniloc referred to an "install limit" that keeps track of the number

6    of activations that result from the activation process:  "Microsoft's activation

7    process will not activate the software if the installation limit has been reached,

8    blacklisting the unique identification code when the number of activation attempts

9    is not less than the predetermined threshold so that the authentic copy of the

10   software is prohibited from receiving any future activation codes from the remote

11   service system." *See, e.g.,* Complaint at ¶ 41.  But tracking activations is different

12   from tracking "attempts to obtain service data" for use in an activation, and is

13   certainly different from tracking ***all*** such attempts, as required by the construed

14   claims.  Uniloc never alleged that the "install limit" tracks any "attempts to obtain

15   service data," and certainly did not allege that Microsoft tracks all such "attempts"

16   (successful and unsuccessful).

17          Uniloc's Complaint provided additional excerpts from documents and

18   websites that refer to the install limit in supposed support of Uniloc's infringement

19   allegations (Complaint at ¶ 39, 41, 63, 68), but those excerpts similarly suggest

20   only that Microsoft's products track activations.

21          First, Uniloc cited the below excerpt in paragraphs 39 and 63 of its

22   Complaint:

23

24

25

26

27

28                                          7

Complaint at ¶¶ 39, 63.  This document concerns "installs."[3]   It states that Office 365 Home may be installed on "5 PCs or Macs, 5 tablets, and 5 smartphones."  In the illustrated example, three of the five permitted PC/Mac installs exist, two more PCs/Macs installs remain, five tablet installs remain, and five smartphone install remain.  The document says nothing about tracking all attempts to obtain service data, including any unsuccessful attempts.

Second, Uniloc cites the "Managing installs" document.  This second document, like the first, discloses tracking the number of total successful concurrent "installs":

_____

[3] This document, like others that Uniloc cites to, uses the word "install" to refer to a device with activated software.  It is not clear if Uniloc is referring to tracking the number of instances of activated software (i.e., activation after the software has been installed on a device), or referring to tracking the naked installation of the software (i.e., before the software is activated).  For the purpose of this motion, however, it makes no difference which of these Uniloc is referring to, because neither is considered an "attempt to obtain service data."

8



*Id.*  But again, it says nothing about tracking all attempts to obtain service data. Nor does the document discuss tracking all (or even any) unsuccessful attempts to obtain service data.

Uniloc cites to a third document, which similarly states that Microsoft tracks the number of concurrent installs (e.g., "Install Limited Reached").  In this example, the software will not activate a third computer because two other computers already have activated software:

Complaint at ¶¶ 41, 68.  The document further provides a link to "deactivate" an install, which would free up one of the two activations for another computer.  This document says nothing about tracking all attempts to obtain service data, including all (or even any) unsuccessful attempts.

Thus, Uniloc's allegations in its original Complaint (if viewed in the light most favorable to Uniloc and if accepted as true) are that Microsoft's product, like the products in *Acronis*, track the number of concurrently activated machines.

9

1    Uniloc never alleges that Microsoft's products track the number of "attempts to

2    obtain service data" for use in the activation process, which is what the claims

3    require.

4        **2.    Uniloc's Amended Complaint Does Not Allege that**
         **Microsoft's Products Track "All Attempts to Obtain**
5        **Service Data"**

6        Uniloc's Amended Complaint does little more than regurgitate Uniloc's

7    original Complaint.  The only noticeable relevant additions are in paragraphs 37

8    and 41 (and identical corresponding edits in paragraphs 57 and 66).  But those

9    additions do not change Uniloc's infringement theory from its original Complaint

10   (and also from the prior *Acronis* matter).  Critically, the Amended Complaint does

11   not include additional factual allegations to the effect that Microsoft products track

12   *all attempts to obtain service data*.

13       The addition to paragraphs 37 and 57 (emphasized below) recites certain

14   alleged steps in Microsoft's activation process, and concludes that the sending of

15   an activation code does not always result in a successful activation:

16       37. The Accused Infringing Devices prevent piracy of Microsoft Office
         products installed in a data storage element on a user's computer
17       through an activation process. In the activation process, software is first
         installed on one or more computers, but is only operational after it is
18       activated. The activation process includes Microsoft sending an
         activation code or entitlement to the computer or device that has an
19       installed copy of the software. The sending of the activation codes does
         not always result in an Office product being successfully activated. For
20       example, an activation may not be fully successful if the device
         including the installed copy of Office has another license on it.
21

22   Amended Complaint at ¶ 37.  Even if true, Uniloc is not pleading that Microsoft

23   tracks all (or any) attempts to obtain service data in the activation process.

24       Uniloc's addition to paragraph 41 and 66 (emphasized below) refers to

25   purported scenarios where the software begins the activation process (e.g., it

26   requests an activation code) but the installed software is ultimately not activated.

27

28                                        10

Based on these allegations, Uniloc concludes that "install limit" does not track only the number of installs, but also includes the number of times an activation code is sent to a device:

> 41. Microsoft's activation process will not activate the software if the "installation" limit, which includes successful and unsuccessful activation attempts, has been reached, blacklisting the unique identification code when the number of activation attempts is not less than the predetermined threshold so that the authentic copy of the software is prohibited from receiving any future activation codes from the remote service system. Although Microsoft refers to this threshold as an "install limit," it does not strictly reflect a number of "installations" (e.g., a user can install a copy of Office on a device and choose to not activate it). Rather, the "install limit" reflects the number of times an activation code has been sent to a device having an installed copy of an Office product (i.e., the number of times an activation attempt has been made). Because the sending of an activation code does not always result in an Office product being successfully activated (e.g., if another license is on the device), the "install limit" reflects both successful and unsuccessful activation attempts.

Here, Uniloc is alleging only that the install limit tracks the codes sent *by the server* but not used to activate the software. But the claim limitation requires tracking all attempts *by the device* to obtain service data from the server as a part of that activation process, and Uniloc does <u>not</u> allege Microsoft does that.

Uniloc also adds an excerpt from Microsoft's website entitled "activated with the wrong license", but it is not apparent how this excerpt is relevant to any pertinent issue as it relates to a user who has successfully activated software using one of multiple possible licenses. Nothing in the passage suggests Microsoft counts all attempts to obtain service data from the server as part of an activation process. Amended Complaint at ¶ 41.

Uniloc's Amended Complaint is thus like the original Complaint in that Uniloc fails to allege that Microsoft tracks all attempts to obtain service data.

11

## III.   ARGUMENT

### A.   Legal Standards

#### 1.   Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  *Ileto v. Glock*, 249 F.3d 1191, 1199-2000 (9th Cir. 2003).  When evaluating a motion to dismiss, the court must accept the plaintiff's allegations in the complaint as true and construe them in the light most favorable to the plaintiff.  *Shrawz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

#### 2.   Issue Preclusion

Issue preclusion, otherwise known as collateral estoppel, applies when "(1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action."  *In re Palmer*, 207 F.3d 566, 568 (9th Cir. 2000); s*ee also Paulo v. Holder*, 669 F.3d 911, 917 (9th Cir. 2011); *TecSec, Inc. v. International Business Machines Corp.*, 731 F.3d 1336, 1341 (Fed. Cir. 2013).  For the purposes of collateral estoppel, parties have privity if they have a "mutual or successive relationship to the same rights of property."  *Blatty v. Warner Bros. Entm't,* 2011 WL 13217379, at *8 (C.D. Cal. Apr. 21, 2011).

Issue preclusion is an issue that may be resolved on a Rule 12(b)(6) motion. *See, e.g., Holcombe v. Hosmer*, 477 F.3d 1094 (9th Cir. 2007); *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated on other grounds by Astoria Fed. Savs. & Loan Ass'n v. So/imino*, 501 U.S. 104 (1991).

### B. Uniloc Fails to State a Claim Because the Pled Facts As a Matter of Law Fail to Establish Patent Infringement

To avoid a motion to dismiss, Uniloc had to plead *facts* from which infringement could be plausibly inferred.  *See, e.g., Macronix Int'l Co. v. Spansion Inc.,* 4 F. Supp. 3d 797, 804 (E.D. Va. 2014) (applying *Twombly* and *Iqbal* to direct infringement claims).  Uniloc has failed to do so—and cannot do so.

Under the prior court's construction, each asserted claim of the Bahar patents requires a remote activation server to base an activation decision on counting "all attempts to obtain service data" (e.g., requests for an access code or activation code) that the remote activation server receives from a copy of software. Uniloc's allegations, which are assumed true on a motion to dismiss, posit that the accused products count the number of concurrent *installations* and/or (if read in the best light for Uniloc) *activated machines*, but not that those products count all (or even any) "attempts to obtain service data" during the process of activation. Thus, on its face, Uniloc's Amended Complaint fails to "state a claim to relief that is plausible on its face."  See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The additional allegations Uniloc included in its Amended Complaint make no difference.  Uniloc now alleges that there may be unsuccessful activations in two scenarios: (1) "if the device including the installed copy of Office has another license on it" (Amended Complaint at ¶ 37); or (2) "a user can install a copy of Office on a device and choose to not activate it."  Amended Complaint at ¶ 41. Uniloc's allegations are unsupported and contradicted by other of Uniloc's allegations in the Amended Complaint.  But even if true, in both scenarios, Uniloc is alleging that Microsoft is tracking scenarios where activations were not successful *after the activating software received service data* (e.g., after the software receives an activation code) from the remote activation server—*not that Microsoft is tracking the attempts to obtain that service data in the first place*.

13

*Id.* at ¶ 41("the 'install limit' reflects the number of times an activation code has been sent to a device having an installed copy of an Office product").

Thus, Uniloc cannot plausibly infer infringement from the facts as plead.  In both scenarios, the requesting software received an activation code.  Even though the code (i.e., "service data") was not used, both scenarios would be considered "successful" attempts to obtain service data.  Thus, it cannot be inferred from these facts that Microsoft is tracking unsuccessful attempts to obtain an activation code. In fact, nowhere does Uniloc allege that Microsoft tracks those underlying attempts to obtain service data (e.g., requesting an access code).

Importantly, this is the exact theory that Uniloc pursued unsuccessfully in *Acronis*.  In *Acronis,* Uniloc was pursuing an infringement theory that concerned tracking activations, and not the attempts to obtain the service data that was used in those activations.  The prior court considered that theory, and rejected it, interpreting the claims to require counting all attempts to obtain service data from the activation server.  *Markman* Order at 10, *Uniloc USA, Inc. et al. v. Acronis, Inc. et al.*, No. 6:15-cv-1001 (E.D.Tex. February 21, 2017), ECF No. 162.  The prior court expressly rejected Uniloc's attempt to equate counting attempts with counting activations or installations:

> As claimed, the limitation tracks the number of "attempts" to obtain service data for activating the software application and whether that number exceeds a certain predetermined threshold. Claim 15 does not state what is tracked is the number of activations or installations of the software exceeds a predetermined threshold.

*Id.;* ("The specification also references attempts as attempts to activate, not actual activations or installations of the software application."); *Id.* at 11 ("[T]he specification indicates that only attempts are tracked, not activations.")  Uniloc cannot press forward on the same rejected theory here.

14

1   Courts have dismissed claims similar to Uniloc's where the actual factual

2   allegations in the complaint fail to support the infringement theory.  For example,

3   in *Cumberland Pharmaceuticals Inc. v. Sagent Agila LLC*, the court dismissed an

4   infringement complaint where the plaintiff alleged that the accused products

5   contained a chemical agent that the asserted claims expressly excluded.  No. 12-

6   825-LPS, 2013 WL 5913742, *1-*3 (D. Del. 2013).  Similarly, in *Nalco Co. v.

7   Chem-Mod, LLC,* the court dismissed an infringement complaint where

8   "[plaintiff's] own allegations and attached exhibits contradict that the [accused

9   product] directly infringes the method patent found in the 692 Patent."  No. 14-

10  CV-2510, 2015 WL 507921, at *3 (N.D. Ill. Feb. 4, 2015) ("The 692 Patent

11  involves injecting chemicals into flue gas after the coal has been burned, whereas

12  the Chem–Mod™ Solution is a method that adds sorbents to cold coal when it is

13  on the coal feed belts and before it is combusted."); *Atlas IP, LLC v. Exelon Corp.*,

14  189 F. Supp. 3d 768, 778 (N.D. Ill. 2016) ("Even apart from Atlas' (1) indefensible

15  claim construction and (2) the fact that its description of how the Network Products

16  supposedly practice the Frame and Power Elements means that they almost

17  certainly do not practice the Repeating Cycle Element, that description of the

18  Network Products is actually undercut by the SAC itself. And that provides a third

19  sufficient reason to dump the SAC.").[4]

---

20  [4] *See also Moody v. Morris*, 608 F.Supp.2d 575, 579 (S.D.N.Y. 2009) (dismissing

21  patent infringement claims where the patents "are directly related to the ReadSpeak

22  captioning system [and] [b]y contrast, [the accused system] Word World is

23  comprised of 'word-objects' that do not rely on any captioning or subtitling

    system"); *Roper v. Jo-Ann Stores, Inc.*, 211 Fed. Appx. 950, 951 (affirming

24  dismissal where patent requirements could not apply to accused product);

25  *Pieczenik v. Abbott Labs.*, No. 10-2230 (JAP), 2011 WL 1045347, at *6 (D. N.J.

    Mar. 23, 2011) (dismissing infringement claims where products could not possibly

26  be covered by the patent's claims); *Gharb v. Mitsubishi Elec. Automation, Inc.*,

27  No. 10 C 07204, 2012 WL 1986435, at *3 (N.D. Ill. June 4, 2012) (dismissing

    direct infringement claim prior to claim construction).

28

As in *Cumberland* and *Nalco*, Uniloc pleads that Microsoft products track concurrently activated machines and/or installations, which a prior court has confirmed is different than tracking attempts to obtain service data. Thus, based on the factual allegations in Uniloc's Amended Complaint, Uniloc has failed to plead plausible allegations of infringement.

## C.   Uniloc Cannot Offer a Different Construction from the *Acronis* Case

Uniloc's conclusory statements that Microsoft counts "attempts" are based on a claim construction position Uniloc already lost in *Acronis*. That litigation went to judgment, and therefore Uniloc is precluded from re-arguing for its failed construction again here. Each of the four requirements for issue preclusion unquestionably applies here.

First, the construction of "attempt" was fully and fairly litigated and decided in *Acronis*. *Uniloc USA, Inc. et al. v. Acronis, Inc. et al.,* Civil Action No. 6:15-cv-1001 (ED.Tex. February 21, 2017) at Dtk. No. 162 (construing "attempt"). The question in both cases is identical. Here, as in *Acronis*, Uniloc alleges that products infringe because they allegedly count the number of successful activations. And here, like in Acronis, Uniloc relies on document(s) suggesting the accused product may not activate if the user exceeded a maximum number of activations (or installs). *See, e.g.,* Complaint, *Uniloc USA, Inc. et al. v. Acronis, Inc. et al.,* Civil Action No. 6:15-cv-1001 (ED.Tex.), ECF No. 1 at ¶ 18; Amended Complaint at ¶¶ 43, 70. Thus, in both cases, Uniloc alleges an infringement theory that is contrary to the meaning of attempt as construed by a federal Court.

Second, the construction of "attempt" was actually litigated in *Acronis*. The construction of "attempt" was a disputed issue, the parties submitted competing briefing on it, and after a *Markman* hearing, the court rejected Uniloc's construction in its *Markman* order:

16

> [T]he plain meaning of this phrase, which is evident from the language of the claim and the specification, includes all attempts (both successful and unsuccessful attempts) to obtain the [activation] service data.

*Uniloc USA, Inc. et al. v. Acronis, Inc. et al.,* Civil Action No. 6:15-cv-1001 (ED.Tex. February 21, 2017), Dkt. No. 162 at 11.

Third, the *Acronis* case ended with a final judgment.  After the court construed "attempt," Uniloc filed an *opposed* motion to dismiss:

> On February 21, 2017, the Court issued its Memorandum Opinion and Order construing the disputed claim terms of the '696 patent ("Claim Construction Order"). In view of the Claim Construction Order, as well as information provided by Acronis to Uniloc regarding the damages at issue, Uniloc believes it best, for all parties, that this litigation be dismissed.

Motion to Dismiss, *Uniloc USA, Inc. et al. v. Acronis, Inc. et al.,* No. 6:15-cv-1001 (E.D.Tex. April 3, 2017), ECF No. 171.  The defendant opposed an outright dismissal and sought a judgment that would clarify that Uniloc was estopped from refiling its infringement action.  Uniloc conceded, and the Court entered final judgment against Uniloc.  Final Judgment, *Uniloc USA, Inc. et al. v. Acronis, Inc. et al.,* No. 6:15-cv-1001 (E.D.Tex. May 31, 2017), ECF No. 181.

Finally, fourth, there is privity between the plaintiff in this case, and the plaintiffs in *Acronis*.  Uniloc USA, Inc. was a party in the *Acronis* matter and alleged it held all substantial rights in the '696 patent.  Acronis Complaint at ¶ 11.  Uniloc 2017 is the current plaintiff, and alleges it holds all substantial rights in the '696 patent family.  Amended Complaint at ¶ 4.  Thus, Uniloc 2017 is successor in interest to Uniloc USA.  *Blatty v. Warner Bros. Entm't,* 2011 WL 13217379, at *8 (C.D. Cal. Apr. 21, 2011) ("For the purposes of collateral estoppel, parties have privity if they have a 'mutual or successive relationship to the same rights of property.'") (quoting *Consumer Advocacy Grp., Inc. v. ExxonMobile Corp.,* 86 Cal. Rptr. 3d 39, 51 (Ct. App. 2008)).

Thus, the doctrine of issue preclusion prevents Uniloc from re-construing the meaning of counting of "attempts."

## IV.    CONCLUSION

For the reasons stated above, Microsoft respectfully requests that the Court grant Microsoft's motion to dismiss the Bahar Patents from this case with prejudice.

Dated:  January 7, 2019                    Respectfully submitted,


                                           FISH & RICHARDSON P.C.


                                           By: */s/  Aamir A. Kazi*
                                               Aamir A. Kazi

                                           Attorney for Defendant
                                           MICROSOFT CORPORATION

## **<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on January 7, 2019 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/EMF system per Civ. L.R. 5-3.3.  Any other counsel of record will be served by U.S. Mail or hand delivery.

By:    */s/ Aamir A. Kazi*         
        Aamir A. Kazi

19